First up is a set of cases 21-2158, 21-2159, and 21-2164, which have been consolidated for oral argument as directed in the order issued on October 27, 2022. And I thank counsel for your efforts to make argument efficient in this case. And consistent with that order, we'll hear first from counsel for the appellants in 21-2158. And, counsel, you have 12 minutes. Do you wish to reserve time for rebuttal? Yes, I ask to reserve two minutes for rebuttal, Your Honor. Two minutes for rebuttal. You may proceed. Thank you. Thank you, Your Honor. May it please the Court, Caitlin Halligan on behalf of Brookdale Hospital. In March of 2020, the Secretary of Health and Human Services issued a declaration triggering the PREP Act's extraordinary immunity and preemption protections, which were enacted to facilitate the development and use of specific countermeasures in a national public health emergency, protections that were especially important here in New York City, where health care providers came out of retirement and from across the country to work around the clock in the midst of a true crisis. The PREP Act covers all claims for loss relating to the use or administration of a covered countermeasure. At issue today are claims by plaintiffs in two cases against three sets of defendants. The claims against my client, Brookdale Hospital, and its medical providers rest on their decision not to test the plaintiff, Ms. Leroy, for COVID, consistent with CDC guidelines then in place. The claims against the other defendants present different scenarios. I'd like to start by addressing a question that cuts across all three cases, why the PREP Act affects complete preemption and the scope of that preemption. I'd also like to address then the specific circumstance at issue in the claims against Brookdale, whether the purposeful allocation of a covered countermeasure in accordance with CDC instruction is covered by the statute's immunity and preemption provisions. So first, complete preemption. Beneficial, which this Court said revives the framework for deciding whether a federal statute completely preempts state law claims and thus creates federal jurisdiction, says that the Court should ask whether the federal cause of action that is created wholly displaces the state cause of action. And it gave three indicia. First of all, extraordinary preemptive force, which the PREP Act certainly has. It has a crystal-clear express preemption clause in Section B-8 that uses the most expansive language per the Supreme Court's decision in Morales, relates to that it's possible. It is coupled with, I think this may be sui generis, a very broad immunity from suit and from liability in Section D-A. Secondly, it substitutes an exclusive federal cause of action for willful misconduct. As the Third Circuit said in Maglioli, that provision makes this statute unambiguously completely preemptive in its effect, and the choice by Congress to use similar language to exactly the phrase that the Supreme Court had identified in beneficial exclusive cause of action. But Maglioli says exclusive as to what, and that clear exclusive language it finds is just with respect to willful misconduct. Yes. I think the scope question is the question, isn't it? I think that that's exactly right, Your Honor. But because I think my adversary argues that there's no complete preemption at all, I wanted to address that first. I think that that is the question of complete preemption is a complicated one, isn't it? And it's a sort of funny term because this sort of total preemption or field preemption, but that's not what we mean here. No. We mean something different. Yes, Your Honor. That is correct. And what the Supreme Court has instructed and this Court has also laid out is that complete preemption occurs when a federal statute so wholly displaces the state cause of action as to effectively transform it into a federal statute. And to transform it into a federal cause of action. Yes, Your Honor. But I take it your argument is there actually is no federal cause of action in any case whatsoever of medical malpractice in the treatment of COVID? No, Your Honor. That is not our position. Okay. And this goes to the scope question, I think, Your Honor, which I think is the crux of the case. Where's the federal cause of action in non-wilful conduct? Yes. So that is, I think, the scope question, Your Honor. And I think that it's important to keep in mind that the Supreme Court has been very clear that Congress is not handcuffed to effecting complete preemption only with respect to the scope of the exclusive federal cause of action. Well, that conflicts with Sullivan, our case. Pardon me? That conflicts with our case in Sullivan. I think not, Your Honor. I think that administrative doesn't count, that it's really creating another federal jurisdiction that can be exercised by the courts. Your Honor, if the only provision in this statute was the compensation fund, then I think you would be correct. This case would be controlled by Sullivan. It's different. It carves out willfulness, but for federal jurisdiction. But beyond that, it's just as you say. So, Your Honor, I think that Davila and Briarpatch go directly to that question and explain why this statute is different from the RLA provision in Sullivan that Your Honor references. What the Supreme Court said in Davila first is that a State claim need not be what the Supreme Court said is strictly duplicative of a federal cause of action. That is because Congress has the leeway to engage in what the Supreme Court said is careful balancing. It can take wider State law causes of action and instead have a narrower cause of action. It is not the case that Congress is bound by the parameters of that. And in Davila, what the Court said there is we are not going to take a formalistic approach that turns on the particular label that a plaintiff uses in its complaint. So in Davila, there, there was a tort claim that had been alleged, and the Supreme Court said even though what ERISA addresses is a contract claim, that is elevating form over substance. And the distinction here, which is the distinction with respect to Sienter, exactly the kind of distinction that this Court said in Briarpatch is not sufficient to make a State law cause of action entirely different. Sotomayor What if it weren't Sienter? So what if the, let's do it this way. What if the exclusive Federal cause of action carve-out were for breach of contract claims? So the distinction is lots of elements. It's an entirely different claim. You would still argue that some broad scope, and you'll tell us what the scope is, is still subject to complete Federal preemption. No, Your Honor. I think that what Briarpatch says is that where there is an entirely different that that is not something that is covered by complete preemption. But what Davila and Briarpatch, I think, both indicate is that the difference in Sienter, which is at play here, is not sufficient to make it entirely different. So, for example, in Briarpatch there, the Court says a difference in awareness or intent doesn't make it entirely different. But where you have, and that case involved a partnership, a claim of breach of fiduciary duty, that is so separate from what Congress is intending to address in its cause of action, that that is not subject to preemption. To say that this is a mere difference in Sienter, there's a huge difference between murdering your patients and medical malpractice, right? So willful misconduct in our normal conception of what happens in hospitals seems to me to be a quite different thing than ordinary malpractice. Your Honor, I think that's, I would disagree with that. And here's why. Because, first of all, what the Supreme Court says in Davila is that complete preemption should be applied in a way that does not allow artful pleading, which is the genesis of the doctrine in the first place. This is very unartful pleading in this case. This is far removed from artful pleading. It's a standard claim of malpractice, right? Your Honor, I would ask the Court to look at the complaint. If you look at JA39 and JA53, it is clear that against my client there is one act that is alleged. It is a decision not to test consistent with CDC guidelines. That one act is labeled as willful as well as negligent and grossly negligent. So I think it's a paradigmatic example of the kind of artful pleading that the Supreme Court said does not in any way prevent complete preemption. What about failure to test in violation of CDC guidelines, for example? How would that play out in your scenario? I think that the failure to test in violation of CDC guidelines, first of all, might be willful misconduct because it might be in the... How would it be willful if it's just negligent? The argument is this person was totally unaware of any of the rules and regulations. You know, it's just an inept, incompetent fool. Well, Your Honor, I think that I took your hypothetical to mean someone who deliberately violated CDC guidelines. No, no, no, no, no. I'm not defining a willful misconduct case. I'm suggesting a case of straight-up negligence. Your Honor, I think that under Davila, to give effect to what the Supreme Court said in Davila, which is that the two causes of action need not be precisely duplicative. And to give effect, the difference between a contract and a tort claim, Your Honor, I would say is far more significant than the difference between willfulness and negligence. I think also to step back, it is clear that what Congress meant to do here, I see that my time is run up. I might finish my statement. Well, they may have meant to do something, but that doesn't mean they did it. Well... In the statute. And really, what we're looking at here is read the complaint and say, when you read the complaint, is this really a Federal cause of action? And I think that it... When you read the complaint. Not looking at the statute, but reading the complaint. How can you say that it's a Federal cause of action? If I may, Your Honor... State malpractice claim. Your Honor, two answers, if I may. First of all, with respect to whether that can fall within the scope of complete preemption. Again, the Supreme Court and this Court both have made clear that Congress isn't handcuffed. It can create a Federal cause of action which is narrower. That is, I would say, what is done here. And secondly... But they didn't do it here, did they? I believe that they... For willfulness, not for ordinary negligence. And what they clearly intended to do was to wholly displace any State law claim that arises out of or relates to the user administration... of statutes that completely preempt. And the Supreme Court has done it, too, in only three cases. And we've done it in Sullivan, in the Atza case. Yes. And that's about it. And in Breyer-Petch. The reason is because defensive preemption is common. Yes. We're very familiar with that. Yes. And that may be, well, what's at stake here. And I think that's what the advisory opinion and the declaration by the Secretary said, that when they use the term complete preemption, complete defensive preemption. I think that... So you can raise your claim, certainly raise your claim, in State court and very likely to prevail. I don't know why you're insisting that they don't have jurisdiction. Well, because, Your Honor, what Congress intended to do when it passed this statute was to funnel any claim for any loss relating to the administration or use of covered countermeasure into Federal court. No, no, no. Most of them they channel to the administrative fund. Almost everything that could happen in a hospital short of actual, affirmative, intentional mistreatment of patients goes to the fund. It doesn't come to court. There's no Federal cause of action for that. Well, that is correct, Your Honor, although I would say that the test is whether or not there is a colorable claim, not whether there is a claim that succeeds on the merits. And I think that the distinction here in a complaint that uses the word willful certainly makes it colorable in any event. But, look, if you... But is that distinct? I mean, you can't speak for other defendants. But suppose we agreed with that. Yes. And you're not really arguing that you win only on that ground, right? Well, I certainly think it is a ground on which we could win. And I think that beyond that, to allow the sort of pleading, the artful pleading that distinguishes along those lines cannot be squared with DAVLA. It can't be squared with briar patch. And also, Your Honor, stepping back in terms of... Well, I'm not saying that we prohibit State causes of action of all sorts. We intend this to be what the Supreme Court calls complete preemption. They could be very clear about that if they chose. I would say they did, Your Honor. And what the Supreme Court has said is that when Congress uses the exact same language and so this was how they got to this result in the ERISA cases because the same language that was used in the LMRA had been used there as well. What Congress did here is exactly that. Congress chose the precise words, exclusive Federal cause of action, that are used to designate and to trigger. But so back to my original hypo-misalligation. If it was exactly that but for breach of contract claims, do you make the same argument or a different argument? I think the breach of... Because it still begs the question, exclusive Federal preemption, jurisdiction as to what? I think that there are certainly some claims that would be a different, would be a harder case. And again, I think Breyer patched distinguishing between breach of fiduciary duties. I'm saying, just to stick with my hypo for a second. Yes. Same claims. Yes. But the statutory language, exclusive Federal jurisdiction is different. To the extent that there is... Do you still argue that these claims, do you make the same argument that these claims may only be brought in Federal court? Well, to the extent that the claim at issue would be one that is essentially a medical malpractice claim. So breach of contract arising out of the failure to provide services contracted for. If those services were for the administration or use of a covered countermeasure, I would say yes, and that's exactly... But you're saying irrelevant, in a sense, to your argument is the exclusive Federal cause of action language. No. But what I am saying is that just as in Davila where contract and tort were not sufficiently different to escape complete preemption, the same would be true here. I think it's also important to understand the context here. There were health care providers who came here from all over the country. And Congress passed this statute to ensure that that kind of conduct would not subject folks to litigation in 50 states around the country. Did Congress specifically in mind health care workers traveling across jurisdictions in 2007? No, Your Honor. What Congress did have in mind was the provision of medical services in a true national public health emergency. And to ensure that the risk of liability and particularly the exposure in 50 different states would not chill that kind of conduct. And that's shown by the decision to use the words exclusive Federal cause of action. That is exactly what those words convey, given the Court's language in Beneficial. Thank you, Ms. Howard. Thank you, Your Honor. We will hear next from counsel for appellants in 2159, 2159. That's Mr. Walber. No rebuttal time, correct? Correct. You may proceed. Thank you. And may it please the Court, Mr. Walber, on behalf of the Mount Sinai defendants. I'd like to focus, if I may, on the application of the PREP Act's immunity from suit provision to the care and treatment that's been put at issue in the complaint against the Mount Sinai defendants. Because when that immunity from suit applies, the only cause of action that it even permits in the first place is a Federal cause of action. There is no corresponding State law cause of action in situations where you have an immunity from suit under State law. But the immunity is a defense. But it's an immunity from suit, not just from liability, Your Honor. And that can be raised before the State court. Yes, it can. Just as in every situation where complete preemption applies, you can raise the defense in State court as well. The point here is that we opted to remove it to Federal court so that the Federal judiciary can apply. Complete preemption, as we're thinking about it and as the case law seems to indicate, is very different from field preemption. Correct. Field preemption is what we normally would assume that you might be able to evade yourself of, I would think. And that would be independent of the courts. But what's stated in the State complaint is really a Federal cause of action is the issue. And there is no indication here. There's a compensation scheme. But administrative, at least in our case law, administrative remunerations are not Federal causes of action. It can't be considered Federal causes of action. There is a Federal cause of action for willfulness. But that's a discrete, some part of the universe of causes of action. Well, Your Honor, just as in every situation where complete preemption applies, the complaint does not expressly assert either the elements or on the face of the complaint the labels associated with the Federal cause of action. What matters under the beneficial approach is the question of exclusivity and congressional intent to create an exclusive Federal cause of action. And under the PREP Act, that intent is pretty clear. The statute says there's only one cause of action available as the sole exception to the immunity from suit that the statute also creates. And that immunity from suit is what I'd like to address, if I may, briefly. I know my time is running. The PREP Act provides immunity from suit not just for injuries caused by the administration of covered countermeasures. The PREP Act provides immunity from suit with respect to all claims for loss that have any causal relationship with use or administration of covered countermeasures. In fact, the language under the very first section of the statute uses some of the broadest language known in our jurisprudence. It's caused by, arising out of, relating to, or resulting from. So there's no dispute here that the plaintiffs aren't claiming that Ms. Leroy was injured by a covered countermeasure. What is — what matters for purposes of the immunity from suit and by implication triggering of the exclusive Federal cause of action requirement under subsection D-1 is that the claim for loss asserted here implicates the defendant's use and administration of covered countermeasures. And it does so in a variety of ways. Here, we have a medical — a continuous course of medical treatment rendered to a COVID-19 positive individual who presented in respiratory distress at the very outset of what was rapidly becoming the most significant public health emergency of the modern era, and in fact, at the epicenter of that emergency here in New York City. And what was done for her was, by definition, the administration of covered countermeasures. Essentially, everything that was done for Ms. Leroy leading up to the events at issue in some form or another was either the express administration of covered countermeasures or was, at the very least, related to their administration of covered countermeasures. Because, in fact, they didn't do what the Act required. So one could argue, presumably, that reading the Act closely, they didn't misapply the countermeasures or make a mistake in the countermeasures, give the wrong doses or whatever it might be that could cause malpractice. They did nothing. Right? I'm not saying that that doesn't violate the statute. I don't know. It arguably does. I think there's a regulation out that was issued later that indicates that that would be sufficient to violate the statute. Yes, Your Honor. I see my time has expired, if I may respond. You may. And if I understand your question correctly, it's that the allegation here is that they misused the covered countermeasures or didn't do something, and that, therefore, brings it outside of the PREP Act, essentially, to respond to that point? They didn't use the countermeasures. Right. That the CDC required. Well, so two points to that. First, if you look at go back to the plain text of the very first section, it says, relating to or arising out of the use or administration. Right? And here, the complaint itself says, and I'll quote just a few examples, the Mount Sinai defendants failed to properly and timely treat COVID-19 infection, failed to appreciate heparin resistance. Heparin is a covered countermeasure. That allegation itself is dependent on the administration in the first place. There's a pretty much, you know, weaning oxygen, supplemental oxygen is an administration of covered countermeasures. Preventing cardiac arrest, monitoring signs and symptoms of cardiac arrest, all of that entails the use of covered countermeasure. And so I would urge this Court to resist the false dichotomy presented of use versus non-use. That's not what the complaint says. And, you know, in a situation like this where you have a complicated medical course, we are not, as defendants, going to receive a complaint like this and assume the only thing it alleges is that we didn't do anything for the patient. The context here is the administration of covered countermeasures. Therefore, the claim relates to the administration of use of covered countermeasures. And the only cause of action that could exist, the only thing that the PREP Act leaves in its wake is an exclusive Federal cause of action. That's the basis for Federal jurisdiction here. Thank you. Thank you. Did you have a question? No. Go ahead. Thank you. All right. Next, we will hear from counsel on behalf of appellants in 21-2164. Mr. Silverman. No rebuttal time, correct? Correct, Your Honor. Go ahead. Your Honors, if I may, I'd like to pick up on two issues. The first is whether or not non-willful claims can be completely preempted. And the second is whether or not there's been willfulness alleged in the specific case that I'm talking about. So this Court and the Supreme Court have been clear that complete preemption applies not only to State law claims that duplicate Federal claims, but also any State law claim that supplements or supplants that claim. And that's because, as the Supreme Court said in Davila, State law claims that go beyond Federal claims risk undermining the careful balance that Congress adopted. And that's what we have here. To protect those responding to a public health emergency from distraction, from harassment, from litigation, for their good faith actions taken in chaotic and The only claims for the worst of the worst conduct will be litigated. All other claims, there's immunity from suit, there's preemption of contrary State law claims, and there's the compensation fund to address those. But any other litigation would undermine the careful balancing that Congress sought to draw. That balancing between ensuring Perhaps, but isn't the question whether Congress sought to have a Federal court rather than a State court adjudicate the question of whether anything remains? Yeah. I think so, Your Honor. And that's because the way that Congress went about wholly displacing State law, it has an immunity from suit provision that's a unique statutory provision, a preemption provision that preempts all State law that is even different from Federal law, a compensation fund, and then this exclusive Federal cause of action where all other claims get sort of channeled into that. And if there are State law claims that are allowed to proceed in State court, then that undermines the balance that Congress was trying to draw between encouraging this robust effort to combat a public health emergency on the one hand, while at the same time providing some compensation and some means of redress, but only for the worst of the worst claims, only for the murder of a patient, as Judge Lynch talked about. And so I think you have to look at the exclusive cause of action in the light of having any effect in these particular areas. And so to address your question, Judge Nathan, your hypothetical, I think the key in looking at whether or not a claim is preempted, is completely preempted, is to look at the conduct of that claim. I think that's what the Court was doing in Davila. Even though it was a tort claim versus a contract claim, at the end of the day, both of those claims were aimed at challenging the misprocessing or the improper processing of benefits. And that's what you have here. The conduct at issue is about the use or administration of a covered countermeasure. And the only difference between the claim that is barred by immunity and the claim that is allowed to proceed is C-Enter. I mean, that is the only change. The rest of the claim is exactly the same. And so that does lead back to prior patch. And this Court's saying that it does not fundamentally alter the nature of a claim for it to have a different C-Enter. It's not to say that it's the same exact claim, but for complete preemption purposes, it does not fundamentally alter the nature of that claim. But you would say, just to ask the flip of the hypo I asked, you would say lots of other differences in elements would also — claims with lots of other differences in elements would also be required to be brought in Federal court, right? So a contract claim. I think so long as the conduct is the same, as long as the conduct is the — related to the administration or use of a covered countermeasure. If it's a contract claim that has nothing to do with that, then I don't think it's completely preempted. But because it is that same conduct that is addressed by the immunity provision and addressed by the complete preemption provision and addressed by the compensation fund provision and addressed by the exclusive Federal cause of action, I think that's what ties it all together. And that's why there's complete preemption. Counsel, I just — your time's up. But I wanted to ask you specifically an appellate jurisdiction question, because I think you're slightly differently situated. Am I right? So we have appellate jurisdiction to consider all grounds in the remand order so long as Federal officer jurisdiction — Federal officer jurisdiction was discussed. That's the BP PLC case. I would say Federal officer jurisdiction was rejected. But, yes, Your Honor. Okay. So the order here from Judge Garifas, I think, expressly was only — in your case, was only on Federal preemption and in a footnote said — and I don't know why, but I'm not considering these other grounds asserted for Federal question jurisdiction. Yeah. So I think what — So you don't have a remand order that discusses Federal officer jurisdiction. So what I think we have, Your Honor, is you have an opinion that talks about certain issues like complete preemption. The remand order itself remands the case and remands a case that had been removed in part. But the opinion says I'm not considering the other grounds. But it has — the remand order, not the opinion, but the remand order has to reject Federal officer removal. Otherwise, the case is still in Federal court. So, I mean, I guess if the case is still in Federal court, then — I mean, I guess — but the error, it seems to me, was the failure to consider all grounds. I suppose the way to put it is I think you're asking for a slight extension of BP PLC, fair to say, that so long as Federal officer jurisdiction is raised in the notice of removal, whether or not the district court considers it, so long as there's a remand order, we should — we have appellate jurisdiction to consider that question. Yes. So 1447d talks about orders. And the order remanding the case, if it was removed, at least in part, on Federal officer, has to be rejecting Federal officer removal. Otherwise, we're still in Federal court. And I don't think it would make sense to encourage district courts to just not address Federal officer removal and remand the case anyway. I think — I think it has to be the case that Federal officer removal was rejected by a remand order that sends the case back to State court. Even though the district court said expressly, I'm not considering it.  So I would separate the opinion. We should ignore that. Well, I would separate the opinion from the order. And the order remanding the case back to State court, I think, is different. If I could make just one final point, Your Honor. Go ahead. This is about whether or not the complaint alleges willfulness in our case. And I would just — I would point the Court to paragraph 63, 146, 147, and 148 of the complaint, which specifically alleges, quote, willfulness, to paragraphs 137, 138, and 139, which allege that OLOC's conduct was, quote, so careless a manner to show a complete disregard for the safety of others, and paragraphs 143, 144, and 145, which says that OLOC's conduct, quote, indicates disregard of the consequences of its actions. Now, whether or not those — those get all the way to the very high bar that the PREP Act sets for willfulness, those are clearly allegations that at least allege a colorable claim of willfulness. And under this Court's decision — well, under the Supreme Court's decision in Arbaugh and this Court's decision in Montefiore, a colorable claim is enough to trigger Federal jurisdiction even if that claim fails. And a colorable claim is one that is not wholly insubstantial or frivolous, is what the Supreme Court says in Arbaugh. And a complaint that includes those sorts of allegations, you could not say that it's completely insubstantial or frivolous whether or not a willful misconduct allegation has been alleged. Thank you, counsel. Thank you, Your Honor. All right. We'll hear from counsel for the appellee in 21-2164. Good morning, Your Honors. Adam Pulver for Ms. Rivera-Zayas. First question, I just want to address the appellate jurisdiction question that Judge Nathan asked. I think — It's a slight extension of BP PLC. Fair to say? I actually don't think so, Your Honor, because I believe in the opinion Justice Gorsuch says the test is whether Federal officer removal was raised in the notice of removal. There's other language that talks about what's discussed in the order. Right. So I think — but I think that language would be enough. It's unclear which — It's actually distinguishable from that case. Correct. But by the logic of the textual focus on what's in the notice of removal, at least, it should be extended here. Correct, Your Honor. Our position would be that if Federal officer is raised in the notice of removal as a grounds for jurisdiction, the remand order to State court would fall under appellate jurisdiction, the exception to the bar on remand orders. Moving to the merits, the PREP Act is not about immunizing the provision of medical services or everything that's done in a public health emergency. That's just not what either the purpose or the text of the statute is. The text is limited to claims relating to the administration to or use by an individual of a covered countermeasure. And none of the claims in these three cases, as recognized by the Fifth and Seventh Circuits in addressing similar claims, involve a claim that someone died because a countermeasure was administered or used consistent with — Well, but it does say relating to. It doesn't. You left those words out in your quotation of the statute. I think you were saying the immunity is to claims arising from the use or administration. But it's from claims relating to use or administration. Isn't that broader? I think this Court and the Supreme Court, and I think most recently in Empire Health Choice, the Second Circuit opinion in that case, discusses extensively how relating to is a term that has different meanings in different contexts. Here — Okay. What does it mean here, then, that is not broader than just claims arising from use? Well, I think — Wouldn't a claim that someone failed to use the service, the countermeasures, be a claim relating to the use of countermeasures? I think the other textual provisions of the statute make it clear that that is not the case, because throughout the rest of the statute, the conditions on immunity say the countermeasure must have been administered or used, and then provides conditions. So those conditions simply could not exist in a claim where no countermeasure was administered or used at all. No one could ever show that the countermeasure was administered to or used in the geographical area specified in the declaration if the countermeasure was not administered or used at all. And so if you look at those other provisions throughout the statute, it says was administered to or used in X situation, was administered to or used. And those clues suggest that nonuse is not at issue, because they just wouldn't make sense. You couldn't be — I can't put my finger on it, but I seem to have read in papers that there was a regulation issued by the Secretary that interpreted this — the statute to cover nonuse. So, Judge Walker, it was not a regulation. There was an advisory opinion from the Office of General Counsel. Is that the 20-01? Yes, 21-01. 21-01. Yes. That was issued in January 2021, and it simply states that purposeful allocation claims could fall within the scope of the statute. We argue, first of all, that that does not owe any deference as an advisory opinion. I understand all those arguments. Yes. But I'm curious. I haven't focused on that particular language that you're referring to, that you say does not subsume nonuse. Correct. So the opinion explicitly says there's a difference between purposeful allocation claims and nonfeasance claims. It does not tie that to the statutory language, but in the case of — in Ms. Rivera-Zias's claims, there is a nonfeasance claim. The claim is there simply were no infection control protocols. Yeah, I understand. And so even under that guidance, if it — where we receive any persuasive value, the claim would not fall under it. I think also — going on to the question of whether the statute is a complete preemption statute at all, I think there's something different about this statute than the statutes that are found to be completely preemptive. State law is not displaced at all, even for willful misconduct claims. Rather, the statute explicitly provides Federal jurisdiction for the resolution of State law claims. The statute provides that State substantive law continues to govern when you bring a willful misconduct claim. And that's very different than ERISA or the LMRA or the Copyright Act, which this case — which this Court recognized in Briarpatch. In all those cases, there was a Federal substantive law that has displaced the State law. And I disagree with appellants who say that the question is whether the conduct is the same conduct covered as the completely preemptive statute. This Court in Briarpatch and in Davila, the Supreme Court, says the question is whether the substantive rights that are seeking to be vindicated are Federal in nature. The Prep Act provides no substantive rights whatsoever. I mean, it — I suppose it's a thin edge, but sometimes we talk about borrowing State law as a form of Federal law. So isn't it a borrow — is it a borrowing provision, or is it a — or is it a — or is it just leaving in place State law? It's just leaving in place State law. I think it's similar to the Price-Anderson Act, which the Supreme Court in the El Paso case and in passing in beneficial notes is not actually a complete preemption case statute. In El Paso, they referred to it as something resembling complete preemption. But that difference matters here, I think, because unlike ERISA or the LMRA, where there's kind of an implicit displacement, here we have an exclusive jurisdictional cause, and we have no need to say, well, Congress meant something else. Congress said what it wanted there to be Federal jurisdiction over, willfulness conduct claims. And I — I think we've — we focus on calling it scienter. It's not just scienter. It's not just willfulness. It's intent to commit a wrongful act. And that is nowhere in these complaints. There is no allegation that there is an intent to commit a wrongful act. One of the things that it also does, though, is for cases where rather broad, anyway, immunity from State causes of action is provided, the complainants are channeled to an administrative fund. This looks to me rather like our 9-11 case, where the idea was to get people to get them out of the court system altogether, but if they, in a certain kind of case, could come to Federal court and litigate in Federal court, but never in State court, but mostly before an administrative board. How is this different? So I think two reasons. One, I think the In re WTC case, it doesn't actually say the statute is a complete preemption statute. The parties, the dispute in that case was what claims fell under the jurisdictional provision of that statute. And that's similar here. There's an exclusive Federal jurisdiction, so we don't really need to get involved in whether it's displacement and complete preemption. We just know it doesn't fit. But this is the opposite of that statute. In that statute, there is a broad cause of action for all claims relating to damages, and then narrower immunity provisions. For claims against the City of New York, for example, there's a specific immunity. For claims in fine, similar insurance providers. Here, it's the opposite. Broad immunity, and then only a specific, narrower kind of claim is there a Federal cause of action. That sounds like a broader displacement of State law, really, than was the case in the 9-11 statute. But it's a broad cause of action, because here, they're really coming very close to wiping out malpractice in the treatment of COVID. Well, two responses to that, Your Honor. One, there may be breadth in the terms of ordinary immunity. It might be broader than that. But that's irrelevant to the complete preemption, because complete preemption, you're getting — how are we getting it to Federal court? That's the question. What arises under Federal cause of action? So it's the breadth of the cause of action, not the breadth of the ordinary preemption defense that matters. Isn't your — the essence of your argument that if the case is not remanded, it stays in Federal court, the next — and we were to rule against you — the next motion by the hospitals would be to have the case dismissed, because there's a Federal remedy — because it's an administrative remedy. And it seems to me hard — and this is something I should be asking your adversary, maybe she can reply to it on the phone — hard to say that you're creating a Federal cause of action when, in effect, the case would be dismissed unless it's willful, unless the conduct is willful. And that's the logic of Sullivan. Yeah. Exactly, Your Honor. And I think that's the Sullivan — I think it was referred to as the Sullivan two-step, some courts have referred to it as. And that's exactly what happened here. When it was removed, it was accompanied by a 12b-1 motion. You don't have jurisdiction to hear this case. Well, how could you not have jurisdiction to hear the case if your whole argument for getting into Federal court is you have jurisdiction? So it's not that — the question isn't whether it's colorable or not, right? But it's a completely different tort that's being alleged. Willful misconduct in the intent to achieve a wrongful purpose, no one has alleged that in any of these cases. Two, there is no allegations of administration or use of a covered countermeasure. Certainly, I think in Ms. Rivera-Zayas' case, the fact that the prep act only applies to — and this is going back to what Judge Unge was saying — relating to the definition of a covered countermeasure is limited to a drug, device, or biological product. So, you know, a screening policy, a — employment policies, none of those are drugs, devices, or biological products. So you can't really fit those into the prep act. So I think those kind of — those claims, because they're substantively not within the scope of the prep act, also would not fall under — be able to be removed, even if they did involve intentional wrongful acts. Mr. Palmer, can I ask a slightly different type of question here? I believe that you, on behalf of your client, filed an amicus brief in a case called Solomon v. St. Joseph's Hospital. That's correct, Your Honor. Obviously, we can't know now how that case is going to be decided. So I can't ask you if — you know, how you distinguish whatever they did, or maybe you're going to be wanting to tell us someday that we can't distinguish what they did because they decided the case in your favor. But is there anything that you can think of that is obviously different about that case that would mean that we should go ahead and decide this one without waiting to see how that one comes out? Yes, Your Honor. Well, two things. First, there's a question of appellate jurisdiction in that case that is not present in these cases. Primarily, that is an appeal from a denial of a motion to dismiss. And so to even get to the — it's unclear whether the court will even reach the merits. So if the court were to decide the case on the grounds of lack of appellate jurisdiction, since no one's challenging and there's no basis to challenge appellate jurisdiction here, they would not reach — if they decided it that way, they would not reach any of the issues that we've been talking about today. That's correct. And secondarily, there's a second way they could reach — not reach the issues in that, since it is an appeal from a motion to dismiss, technically, complete preemption is not the question in that case. The question is whether the immunity applies. And the district court decision there was just denying whether the ordinary immunity provision applies to the factual allegations in that case. So that's a separate question than the jurisdictional one. And I think — so even if the court finds it has appellate jurisdiction. But there's subject matter jurisdiction that they'll have to contend with. Yes, Your Honor. I think it's a little tricky in that case because there was no brief filed on behalf of Appellinis, which is why we went ahead and filed a brief. But because of that, I'm answering to know exactly the deep, deep details of that case. But it might be — it might be wise for us to wait and see how that one comes out before going ahead here. We might want to stay our hand and see what they do decide. Because if they were to find appellate jurisdiction, then I suppose it would be incumbent, would it not, on the Court to consider a question of subject matter jurisdiction because whether anybody raises it or not, the subject matter jurisdiction would have to be raised nostrisponte in that case. Well, Your Honor, I think for two reasons that might not be appropriate here. One, briefing is still ongoing in that case. The Court is awaiting the brief of a court-appointed amicus in that case. And after that, then the parties will have time to file responsive briefs to that case. So there's still a ways to go in that case. But we're not in a race to the — with another panel to decide the case first so that our views on this will control their views should they have to reach it. That's not how it works. They have precedence over us, and that's the way we handle these kinds of things in which — The date of the notice of appeal. I actually believe, Your Honor, I don't know if actually that case is a lower notice of appeal. I think it just went — Date of submission. I think it was just submitted. Submitted. Because there was no appellee's brief in that case. I think your notice of appeal was actually earlier. The notice of appeal in this case, these cases, was actually earlier than in that case. Correct. So it's a very complicated situation. Well, that's for us — Yes. That's for our internal procedures. And I think also — But I appreciate your elucidation of what the differences might be. Yes. That was very helpful. Thank you. And I think one other thing I'd add is that there are approximately, I believe, two dozen cases in this Court that are State pending resolution of these appeals, not pending resolution of Solomon, which, again, obviously the Court could do whatever it wanted to do with that, but that is just another thing just to add into the mix. Do you have a docket number example of that? I don't in front of me, Your Honor, but I don't know. I believe counsel for appellants is counsel in those cases, some of those cases, so I might be able to provide assistance. Thank you, Your Honor. Thank you. All right. And now we'll hear from counsel for appellee in the consolidated 2158, 2159. Ms. May, please. The Court. Annette Hesapidis appearing for the Leroy plaintiffs. This statute expresses Congress's intent not to preempt the claims raised by these — by the complaints. The complaints address failure to use. Even looking at the title of the statute, it's targeted liability protections for pandemic and other measures. Targeted, not broad. And the defendants have, you know, referred the Court to Section A-1, which gives that grant of immunity, and Judge Lynch, as you pointed out, they cite to the language of relating to and arising from as language that should convert administration or use to failure to administer and use. But I'd refer the Court to, as Mr. Polvert pointed out, Section A-3, which says that the grant of immunity is conditioned on, applies only if the countermeasure was administered or used during the effective period. No modification of the language. Whether the countermeasure was administered or used for the category of disease is covered by the Declaration. So there's no indication from the expressed language of the statute that my client's claims fall within the grant of immunity here or that Congress intended to provide such a scope. What would the point be of immunity if you are going to — if the point of the statute is to encourage providers to employ countermeasures during a pandemic, how is that a mission accomplished if those who fail to use those countermeasures receive the same broad grant of immunity? There's absolutely no basis for it. The amicus for DRI and the Chamber of Commerce even note that the legislative record shows the point was to make sure that doctors would administer the vaccine when it became available. We do not encourage doctors to administer a vaccine if they're provided with immunity whether they use it or not. I'm going to park before the horse a little bit here because we're really not focusing on the scope of the immunity at this point. That's something that you'll be raising in whatever court you're in, right? Well, they'd be raising it as a defense in the State court action. Yes. Right. Yes. I understand that. But that's not the question we're facing now. What arguments will be made in State court? Yes. Aren't we really just looking at whether or not a Federal cause of — an exclusive Federal cause of action was created here? Well, if we were looking at that, we would see that the language of the statute is very clear that it is one exclusive cause of action. There's no intent here to displace all State law, garden variety, negligence and medical malpractice claims. The complaint of the plaintiff in this case is outside of the scope of the willful misconduct cause of action. The word willful appears in the heading to the first cause of action at page 839 of the joint appendix. That's the only place it appears. Your complaint says reckless misconduct, wanton, willful, reckless, and or grossly negligent medical malpractice. Correct. But under the well-pleaded complaint rule, this is still a medical malpractice cause of action for failure to — with respect to the Brookdale defendants, failure to administer COVID countermeasures, and with respect to the Mount Sinai defendants, failure to timely diagnose and treat, among other things, a pulmonary embolism. Mount Sinai has argued that because counter — covered countermeasures were used, that this complaint is preempted by the PREP Act. But we're governed here by the complaint, not the medical records that were added to the record. But why is that an allegation of willful misconduct in the complaint? Because it's the failure to use — it's negligent failure, and it's a failure to timely treat and diagnose. There's no — there's no requirement that intent be proven on a medical malpractice claim, and that's what this is. Maybe the artful way to plead these complaints would be to ramp down the rhetoric of the typical malpractice claim and stop talking about highly reckless and total disregard and that sort of thing. Certainly, Your Honor. Just call it negligence. Certainly, Your Honor, that would be the case here. But then they'd say you were just artfully pleading your way around what was really willful, gross, whatever misconduct. Yes. I mean, even under the well-pleaded complaint rule, this is a garden variety, negligence, medical malpractice, cause of action. The Brookdale defendants have argued that there was a purposeful allocation of resources here such that the claims are preempted. The complaint doesn't plead that there was a purposeful allocation of resources. The defendants have tried to inject those allegations here. And under Caterpillar, the Caterpillar case, that's not how the analysis — the analysis must be undertaken here. And furthermore, when there's a purposeful allocation, it has to be tied to the administration of a countermeasure to someone else. And again, that's not pleaded here. So with all due respect, the Brookdale defendants' arguments with respect to this being preempted under the purposeful allocation claim is irrelevant. Furthermore, the PREP Act applies when there is an administration or use of a covered countermeasure to an individual. It's not pertaining to the administration of a policy, which is what they're trying to carve out. Now, the term willful — part of your argument, I guess, is that willful misconduct is perhaps narrower in the Act than it is in — would be in the State court. In State law. Yes. Yes. I mean, this requires pleading with clear and convincing evidence. It's in AD 7, the brief that I have for Leroy, right? It's in the appendix. The appendix. Potentially to achieve — right here. Potentially to achieve a lawful purpose knowingly without legal or factual justification. Correct. And in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit. Yes. I mean, that's far greater than any requirement of a State law cause of action. Right. There is no such State law cause of action. So it narrows the universe to that. Absolutely. Which is why evidence is Congress's intent not to preempt the general negligence claims asserting the complaint. Thank you. Thank you. All right. Ms. Halligan, you have two minutes. Thank you, Your Honor. If I can make four brief points, please. First of all, Judge Walker, your question about whether or not the label willful as used in this complaint is somehow different than willful misconduct goes exactly to what the Supreme Court said in Davila, which is that — I wasn't talking about the complaint. I was talking about the statute. Sorry, Your Honor. I thought that you were asking her about whether or not the complaint alleged the same kind of intent that is set forth in the statute. And my point is that there are differences that are permitted and there is still complete preemption. And Davila makes that clear. I would ask the Court to look at page 215 of Davila, where the Court explains that that is so exactly because of the concern about artful pleading. Secondly, Judge Walker, with respect to your question about whether there is a claim here and whether or not the remedy would simply be dismissal, dismissal under 12bc 6 is different than dismissal under 12b1. The defendants here did not seek 12b1 dismissal as in Sullivan, and so that makes it different. And in Montefiore and Arditi, this Court explained that you can have a colorable claim that gets dismissed and that does not interfere with whether there is federal subject matter jurisdiction. The same is true here. Third point, with respect to the question of whether the purposeful allocation is within the scope of the statute, first, to correct something that Mr. Pulver said, HHS is clear about that, and it is not only in advisory opinions. In the declarations in March and December of 2020, which you can find at JA 112, 115, and 179, if I may just finish, Your Honor, the department there says that the purposeful allocation includes activities and decisions directly relating to the dispensing of countermeasures. And then in December, explains that if countermeasures are limited, which they certainly were with testing in March of 2020, then your argument is we owe deference to that interpretation even in the context of examining whether there is federal question jurisdiction. Your Honor, I think that the question of deference to the Secretary's definition of covered countermeasure, especially given the clear delegation set forth in the statute, is different than the question of whether to defer to the Secretary with respect to an assertion of whether Grapel or federal officer jurisdiction exists here. And so I would say with respect to what counts as a covered countermeasure, deference is absolutely appropriate and it's set forth there. And the last point. Well, may I ask you to address one other question? Of course. Maybe this is the one you were going to get to, but I want to make sure we get to it. Could you address section 247D-60, parens A, parens 3, the certain conditions? And the reason I'm interested in this is this seems to be about the scope of the immunity. So two questions, really, two related questions. One, doesn't your argument that State law is completely displaced here or State jurisdiction is completely displaced here turn in some respect on the scope of the immunity? You're arguing that the immunity is so broad that there's nothing left of State jurisdiction. And that's why it seems to me relevant. What do you do with the fact that the immunity under paragraph 1 has the relating to language? With respect to a covered countermeasure applies only if one of three conditions applies and all of them relate to the countermeasure was administered or used in particular ways. Do you mean with respect to the question of purposeful allocation and whether that counts? I'm not talking about purposeful allocation, but ordinary misfeasance to start with. Right, right. Well, Your Honor, I would point you to a few other places in the text which I think make clear that it is intended to cover certainly purposeful allocation, but choices whether to administer or not. So first of all, the definition of willful misconduct itself includes the phrase act or omission. And I would also point the Court to the additional provisions which reference omissions specifically. 6D sub C4. Well, that means willful misconduct could be an omission. But that's different than the scope of the immunity that is extended to ordinary malpractice claims. Well, Your Honor, I think that a number of places in the statute, and we identify them, first of all, reference omissions, which I think sheds light on what Congress intended. Secondly, the Secretary's. Okay. I'll hear you out. Yes. Okay. Secondly, the Secretary's declarations confirm that, and I believe they are certainly entitled to deference on this question. But third, with respect to whether a reading of the immunity provision would make sense, there were a number of countermeasures. Tests were one. Respirators were another. Vaccines for a long time were another. In which there were allocated decisions that had to be made because there were acute shortages. Okay. So once again, you're talking about purposeful allocation, which strikes me as, if relating to the administration. Yes. But the sort of ordinary malpractice claim that, you know, we had plenty of respirators and any competent doctor would know that this person needed a respirator, but this was not a competent doctor and they didn't put the person on a respirator. Yes. No one's making a triage decision here. It's just dumb. That's the allegation. Yes. Is that kind of claim still, in your view, is displaced? Well, Your Honor, the claims against my client, Brookdale. Well, no, no. But you understand that the complete preemption idea that you are relying upon is an extremely broad one. I do. That depends in part on the scope of the immunity. I think that that is certainly what Your Honor just said is correct. And I do think that that is the way in which it makes sense to read it. And I understand that that would have broad application, but I think that that is in line with a fair reading of the statute and what the Secretary says it means. My point was simply that I think there may be additional reasons why purposeful allocation would certainly be covered, because the statute would lose much of its force if purposeful allocation was not. I got it. So I'm not trying to put words in your mouth. I'm just trying to understand the argument. The argument is, A, there's an enormously broad displacement here that leads to complete preemption, because pretty much everything that doctors did or would have done or failed to do in the course of treating COVID is intended to be protected. But, B, you don't need to go that far for your client to prevail because at a minimum the purposeful allocation, a deliberate triage decision not to use a scarce resource would be, for that there is complete preemption. I think that there must be for the statute to have teeth. And I realize that that first proposition is very broad. But, look, I think when this statute was passed, the kinds of public health emergencies that this country had faced in the last century were far more contained. And so, yes, it is a broad application. But that's because COVID had such a sweeping effect. Yes. Well, COVID is another story, because when this statute was passed, that hadn't happened. But I think we would all agree that whether this is a good statute or a bad one, well-drafted or poorly drafted, makes the right allocation decisions or the wrong allocations of decisions. It is what a lot of people don't think Congress does, which is to actually be prescient and to foresee the possibility of the kind of thing that happened in COVID and to legislate in advance with respect to it. Well, I think that's exactly right, Your Honor. And what I would say to that is to the extent that there are concerns about breadth, that is something that should not shape the Court's fair reading of the language and the scope of the Complete Preemption Clause. If I may just correct one last comment from Mr. Pulver with respect to ATSA and the World Trade Center case. If you look at the statute itself, 408b2, that is exactly what you have here. You have, and I'll just quote from the statute, the substantive law for decision shall be derived from the law of the state in which the crash occurred unless it's inconsistent with Federal law. That's what we have here, along with a clearly defined Federal law standard, which is one for lawful misconduct. And the decision itself cites beneficial and describes the complete preemption analysis at length at page 372. So it clearly is a decision that is looking at that question, I believe. If there are no other questions, thank you very much for the Court's time. Thank you, Ms. Halligan. Thank you to all counsel for your excellent arguments and briefing. We'll reserve the decision. Thank you.